IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**SARAH LUTZ,**

    **Plaintiff,**

**v.**                                  **CIVIL ACTION NO. 1:15CV28**
                                                   **(Judge Keeley)**

**TURNER BROADCASTING SYSTEM,
INC., a Time Warner Company, a Delaware
corporation; HADLEY MEDIA, INC.,
a New Hampshire corporation,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 33]</u>**

Pending before the Court is the motion for summary judgment filed by the defendants, Turner Broadcasting System, Inc. ("TBS") and Hadley Media, Inc. ("Hadley") (collectively the "defendants") (dkt. no. 33). For the reasons that follow, the Court **GRANTS** the motion.

**I. BACKGROUND**

As it must, the Court construes the facts in the light most favorable to the plaintiff as the non-movant. <u>See</u> <u>Ussery v. Manfield</u>, 786 F.3d 332, 333 (4th Cir. 2015).

TBS provides television programming through one of its subsidiary stations, Cartoon Network, Inc. (dkt. no. 1-1 at 6). Among Cartoon Network's programming is a group of late night shows entitled "Adult Swim," which is geared toward adult viewers. <u>Id.</u> at 6-7. As part of its marketing campaign, TBS contracted with Hadley

Media to organize and produce the Adult Swim Fun House Tour ("the Tour"), which visited ten college towns and hosted roughly 10,000 participants (dkt. no. 33-1 at 17). The Tour's centerpiece was a two-story, inflatable house-like structure (the "Funhouse") (dkt. no. 33-1 at 17). On April 26, 2014, Hadley set up the Funhouse near the Morgantown Mall in Morgantown, Monongalia County, West Virginia. Id. at 2. The plaintiff, Sarah Leanne Lutz ("Lutz"), saw the Funhouse on her way to work and, after looking up the event online, decided to participate after her shift ended later that evening. Id. at 28.

Hadley required all persons seeking to participate in the Funhouse to register for the event, electronically sign a waiver releasing the defendants from liability, show proof that they were over eighteen years old, and obtain a wrist band (dkt. no. 33-1 at 17-18, 29). Before entering the Funhouse, the operators required Lutz to stop at two registration tables. At the first table, she provided her driver's license to confirm that she was over eighteen years of age, and, at the second table, she utilized a computer to access the registration and waiver forms through her Facebook account (dkt. no. 33-1 at 2-3). Although Lutz did not specifically recall registering for the event or signing a waiver, she remembered utilizing a computer before obtaining a wrist band for

entry. <u>Id.</u> During her deposition, Lutz reviewed the "Participant Waiver and Release," confirming that her name, personal information, and signature were present on the electronic form (dkt. no. 33-1 at 29-30).

The Particiant Waiver and Release included the following language:

> You acknowledge and agree that the Funhouse contains design features and activities, which may not be suitable for certain individuals and/or which could cause personal injury or damage to personal property. . . . PARTICIPATION IN THE Funhouse ACTIVITY, INCLUDING, BUT NOT LIMITED TO, THE FEATURES/ACTIVITIES MENTIONED ABOVE, CONTAIN CERTAIN INHERENT RISKS AND HAZARDS AND CAN RESULT IN DAMAGE TO YOUR PERSONAL PROPERTY AND/OR SERIOUS INJURY/DEATH TO YOU. YOU VOLUNTARILY ASSUME ALL RISK OF LOSS, DAMAGE AND/OR PERSONAL INJURY "INCLUDING DEATH" THAT YOU MAY SUSTAIN RESULTING FROM PARTICIPATING IN THE Funhouse ACTIVITY. . . . YOU AGREE AND COVENANT WITH ADULT SWIM THAT YOU SHALL NEVER SUE IT (OR ANY OF ITS OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, AGENTS, CONTRACTORS, VOLUNTEERS, REPRESENTATIVES, ATTORNEYS, SUCCESSORS, AFFILIATES, AND/OR ASSIGNS) (COLLECTIVELY, INDEMNIFIED PARTIES) IN EITHER A REPRESENTATIVE OR INDIVIDUAL CAPACITY, IN LAW OR EQUITY, AND YOU SHALL NEVER CAUSE A LAWSUIT TO BE BROUGHT AGAINST ANY OF THE INDEMNIFIED PARTIES FOR ANY CLAIMS, DEMANDS, RIGHTS, OR CAUSES OF ACTION WHATSOEVER ARISING FROM OR RELATING TO ANY KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, BODILY AND PERSONAL INJURIES, DEATHS, DAMAGE TO PROPERTY, OR CONSEQUENCES THEREOF WHICH RESULT FROM YOUR PARTICIPATION IN THE FUNHOUSE ACTIVITY REGARDLESS OF WHETHER THE INJURIES, DEATH, DAMAGE, OR CONSEQUENCES WERE CAUSED BY ANY ACTS OR OMISSIONS (WHETHER NEGLIGENT OR OTHERWISE) COMMITTED OR PERMITTED BY ANY OF THE INDEMNIFIED PARTIES OR BY YOU. YOU EXPRESSLY WAIVE AND RELINQUISH ANY CLAIM FOR NEGLIGENCE OR ANY OTHER CAUSE OF ACTION AGAINST ANY OF THE INDEMNIFIED PARTIES BY YOU OR YOUR LEGAL

> REPRESENTATIVES, HEIRS, ASSIGNS, CHILDREN OR ANYONE CLAIMING BY OR THROUGH YOU, WHICH MIGHT ALLEGEDLY ARISE FROM YOUR PARTICIPATION IN THE FUNHOUSE ACTIVITY.

(Dkt. No. 33-1 at 4, 18). In addition, Hadley's project manager and event producer, Seth Bardake, provided an affidavit stating that there were notices posted throughout the Funhouse containing the following language:

> NOTICE. PLEASE READ THIS BEFORE ENTERING THE FUNHOUSE AREA. IF YOU DON'T AGREE TO THESE TERMS, PLEASE DON'T ENTER! BY PARTICIPATING IN THIS ACTIVITY YOU ASSUME ALL RELATED RISKS AND YOU RELEASE TURNER BROADCASTING SYSTEM, INC. AND ITS CONTRACTORS/SUBCONTRACTORS FROM ALL LIABILITY, DAMAGE AND/OR INJURY/DEATH RELATED TO YOUR PARTICIPATION.

(Dkt. No. 33-1 at 18-19). Lutz, however, contends that she never saw any of the posted signs while she was in the Funhouse. Id. at 31.

After obtaining her wrist band, Lutz entered the Funhouse, where she encountered multiple rooms and a maze (dkt. no. 33-1 at 30-31). At one point, she asked a woman working inside the Funhouse which way the exit was located. The woman pointed her down a hallway, which led to a two-story inflatable slide by which to exit the Funhouse (dkt. no. 33-1 at 31). As she approached the slide, Lutz claims she intended to descend it in a seated position, but was instead instructed by Hadley's employee that she could not descend the slide in that manner (dkt. no. 33-1 at 32).

4

Specifically, Lutz recounted that a male worker at the top of the slide told her that she could not simply sit and slide down, rather, she had to "do something crazy," like roll or flip down the slide (dkt. no. 33-1 at 32). Lutz conceded that, although the workers insisted she either roll or flip, no one physically touched her, and it was possible for her to have just slid down once she was seated atop the exit slide (dkt. no. 33-1 at 32-33).

Lutz began to roll down the slide and, during her first turn, felt her ankle snap while it was underneath her (dkt. no. 33-1 at 32). She stated that she felt three "pops" and then continued to roll to the bottom of the slide, where she yelled for help (dkt. no. 33-1 at 32). Lutz refused workers' requests to leave the area at the base of the slide because it was apparent to her that she had suffered significant injuries to her ankle (dkt. no. 33-1 at 32). Ultimately, Funhouse employees called emergency responders to the scene, where they treated Lutz, eventually transporting her to Ruby Memorial Hospital (dkt. no. 33-1 at 33-34). The following morning, Lutz underwent corrective surgery for her injuries; a dislocated ankle, a broken tibia, and a broken fibula (dkt. no. 33-1 at 34-35).

In her complaint, Lutz alleges that her injuries were caused by one of Hadley's employees insisting that she "descend the slide

5

in a dangerous and unsafe manner not appropriate for someone to exit this slide nor in a manner in which [she] anticipated descending the slide" (dkt. no. 1-1 at 6). Furthermore, Lutz asserts that, although she originally intended to simply sit and slide down the exit, "[i]t was not until she was instructed by the Hadley Media employee to exit the slide in a dangerous manner that she actually did so" (dkt. no. 1-1 at 6). Lutz contends that the defendants' negligent operation and maintenance of the Funhouse was the direct and proximate cause of her injuries (dkt. no. 1-1 at 6).

On January 15, 2015, Lutz filed her complaint against the defendants in the Circuit Court of Monongalia County, West Virginia, asserting one count of negligence (dkt. no. 1-1). On February 18, 2015, the defendants removed the case to this Court based on diversity jurisdiction (dkt. no. 1).

On December 11, 2015, the defendants moved for summary judgment on Lutz's negligence claim, citing two bases (dkt. no. 33). They first argue that they are entitled to summary judgment because Lutz executed a valid waiver prior to entering the Funhouse, agreeing to release them from liability for any injuries that might result from her participation in the Funhouse. They next argue that, during her deposition, Lutz admitted she was the proximate cause of her own injuries when she explained that she

decided to exit the Funhouse in a manner in which she did not feel comfortable. Id.

Lutz counters that there was no meeting of the minds between the parties prior to the execution of the waiver because she did not have enough time to read the electronic waiver, and it was not presented in a clear and concise manner (dkt. no. 34). Moreover, Lutz argues that she did not contemplate that a Funhouse employee would insist that she either flip or roll down the slide, nor did she anticipate exiting the slide in the manner in which she did. Id. Therefore, Lutz contends that, even had there been a meeting of the minds between the parties, the defendants' acts were outside the scope of the waiver. Id. Finally, Lutz disagrees that she was the proximate cause of her own injuries because she merely acquiesced to the employees' insistence that she flip or roll down the slide after believing she had no choice, and because no alternative exits were available to her. Id. at 7-8.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to

7

judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2510 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2556 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256, 106 S. Ct. at 2510 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

### III. DISCUSSION

The defendants assert that they are entitled to summary judgment because Lutz executed a valid and enforceable waiver and release, which relieves them from any and all liability resulting from her participation in the Funhouse, even if her injuries resulted from negligence on their part. Alternatively, the defendants contend that, even absent the waiver, Lutz's decision to roll down the inflatable slide was the sole proximate cause of her injuries, and they therefore cannot be held liable.

**A.   <u>The Waiver</u>**

The defendants argue that Lutz voluntarily executed a valid waiver releasing them from any and all physical injuries suffered by her while participating in the Funhouse, including those injuries that might have resulted from their own negligence. In response, Lutz maintains that the waiver is unenforceable because the parties did not reach a meeting of the minds, in that the waiver "did not contemplate the inherent dangers neither foreseen nor contemplated by [her] prior to entering the Funhouse" (dkt. no. 34 at 1). Further, Lutz avers that the waiver is unenforceable because she had insufficient time to read it and no one working at the Funhouse read or explained it to her.

**LUTZ V. TURNER BROADCASTING SYSTEM, ET AL.**  1:15CV28

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 33]**

### 1. Applicable Law

Courts generally disfavor waivers that release a party from injuries caused by their own negligence. Krazek v. Mountain River Tours, Inc., 884 F.2d 163, 165 (4th Cir. 1989). Such waivers are "strictly construed against the releasee," and their language must be "clear and definite" before it will shield a releasee from liability for its own negligence; any ambiguities in the waiver's language are strictly construed against the preparer. Id.

Nevertheless, the Supreme Court of Appeals of West Virginia has long held that waivers, also known as exculpatory agreements, are normally upheld when they are freely entered into by parties of equal bargaining power, so long as they do not violate a public interest or conflict with an applicable safety statute.[1] See Murphy v. North American River Runners, Inc., 412 S.E.2d 504, 509 (W. Va. 1991). A plaintiff who "*expressly* and, under the circumstances, *clearly* agrees to accept a risk of harm arising from the defendant's negligent or reckless conduct may not recover for such harm." Id. (emphasis in original) (citing Restatement (Second) of

---

[1] Safety statutes include, for example, the West Virginia Whitewater Responsibility Act and the West Virginia Skiing Responsibility Act. Such acts establish codes of conduct and applicable standards of care for particular industries and activities. The parties do not contend, nor does the Court find, that there is any safety statute applicable to this matter.

10

Torts § 496B (1963, 1964)(express assumption of risk)). Krazek, 884 F.2d at 165.

Under West Virginia law, a waiver and release "ordinarily covers only such matters as may fairly be said to have been within the contemplation of the parties at the time of its execution." Murphy, 412 S.E.2d at 511 (internal quotations omitted). Parties are at liberty to mutually agree to waive liability for the negligent acts of the releasee. Id. at 510-11. This is true even when the waiver fails to explicitly use the word "negligence" or "negligent acts or omissions," but instead makes general statements that the releasee is "relieved in effect from all liability for any future loss or damage." Id. at 511 (noting that the words "negligence" or "negligent acts or omissions" are not "magic words" required to clearly waive the right to bring a common-law negligence claim). Indeed, waivers that go so far as to relieve the releasee from claims resulting from its "intentional or reckless misconduct or gross negligence" are valid, so long as it is clear from the facts and circumstances that the releasor intended to do so.[2] Id. at 510.

---

[2]Although Lutz correctly notes that "a general clause in an exculpatory agreement or anticipatory release exempting the defendant from all liability for any future negligence will not be construed to include intentional or reckless misconduct or gross

   **2.   Discussion**

   Here, the language of the waiver is clear and unambiguous, a fact that Lutz does not contest. Instead, Lutz contends the waiver is invalid because of the way it was presented to her, in particular, not permitting her time to adequately read and understand it. This argument lacks merit.

   As a preliminary matter, West Virginia law upholds the use of "clickwrap" or "click-through" agreements, which require users to consent to any terms and conditions through the use of internet web-pages. State ex rel. U-Haul Co. v. Zakaib, 752 S.E.2d 589, 594 (W. Va. 2013). In Zakaib, the Supreme Court of Appeals of West Virginia found no difference between electronic contracts and tangible paper agreements, concluding that electronic contracts cannot be denied enforcement solely based on their electronic format. Id. Instead, courts are required to interpret and apply the same common law rules to electronic agreements as those that have been applied to oral and written agreement for hundreds of years. Id. at 595.

---

negligence . . . ," her complaint asserts no allegations that the defendants' acts were anything more than common law negligence. Dkt. No. 34 at 6 (quoting Murphy, 412 S.E.2d at 510).

Lutz, however, claims that the waiver was not presented to her in a "clear and concise manner" because it "was only accessible by scrolling through [a computer maintained by the defendants], at a makeshift table, after only accessing this waiver through [her] Facebook account."[3] According to Lutz, these circumstances prevented her from having any appreciation for what she was purportedly reading and signing. Finally, she claims that she was only at the waiver table for a very brief time, clearly not long enough to read the waiver, and that no employee of the Funhouse read or explained the agreement to her.

Even taking these claims as true, Lutz's reasoning lacks any legal basis for finding the waiver invalid. She is college educated and makes no claim that she could not comprehend the language contained in the waiver (dkt. no. 33-1 at 25). Further, she fails entirely to provide any factual support that the circumstances somehow prevented her from reading the waiver before she signed it. Clearly, had she chosen to do so, Lutz could have taken adequate time to scroll through the one-and-a-half page waiver.[4]

---

[3]Lutz states that she does not specifically remember the waiver, but does not dispute that her personal information and electronic signature appear in the form (dkt. no. 33-1 at 29-30).

[4]Lutz notes that the entire document is four pages in length (dkt. no. 34 at 5). While true, this does not change the Court's

The fact that Lutz accessed the waiver through her Facebook account, on the defendants' computer, and at a makeshift table is wholly irrelevant. Moreover, the fact that she was at the waiver table for only a brief time is a result of her decision not to read the waiver, not the other way around. Indeed, Lutz makes no assertion that she was rushed in any way and admits there was no line when she arrived at the Funhouse (dkt. no. 33-1 at 29). Finally, Lutz's contention that the employees failed to read the waiver to her lacks merit, as there is no legal requirement that an employee do so.[5] Ultimately, Lutz is not entitled to relief simply because she signed the waiver without reading, knowing, or understanding it. See <u>Appalachian Leasing, Inc. v. Mack Trucks, Inc.</u>, 765 S.E.2d 223, 231 (W. Va. 2014) (quoting <u>Reddy v. Community Health Foundation of Man</u>, 298 S.E.2d 906, 910 (W. Va. 1982) ("A person who fails to read a document to which he places his signature does so at his peril.").

Lutz next claims that the waiver is invalid because it "did not contemplate the inherent dangers neither foreseen nor

---

opinion that she could have easily read such a document in a short amount of time.

[5]Furthermore, at no point does Lutz contend that she asked any questions of the Funhouse employees regarding the waiver.

contemplated by [her] prior to entering the Funhouse" (dkt. no. 34 at 1). This argument also fails, as the language of the waiver, along with her own observations, belie Lutz's contention. The agreement and waiver clearly note that the Funhouse, including the slide, "contain certain inherent risks and hazards and can result in . . . serious injury/death . . . ." See Dkt. No. 33-1 at 4. The very concept of an inflatable funhouse is obviously to provide an apparatus for persons to engage in a variety of physical activities, including running, jumping, bouncing, climbing, and sliding. Taking Lutz at her word, she would have seen patrons participating in the Funhouse, including flipping and rolling[6] down the exit slide as she drove up and while she was preparing to enter (dkt. no. 33-1 at 31). The Court concludes that the waiver contemplated the inherent risk of the type of injury suffered by Lutz and it therefore remains valid and enforceable.

**B.      Proximate Causation**

Having concluded that Lutz waived her right to sue, even if her injuries resulted from allegedly negligent acts by the defendants, the Court need not reach the issue of proximate causation.

---

[6]This must be true if, as Lutz asserts, the Funhouse employees forced the patrons to either flip or roll, rather than slide in a seated position.

### IV. CONCLUSION

For the reasons discussed, the Court **FINDS** that Lutz voluntarily and knowingly signed the waiver, its language was clear and unambiguous, and that it contemplated the inherent risks that led to her injuries. Consequently, the waiver is valid and enforceable, and bars Lutz's right to sue for any damages that resulted from her participation in the Funhouse, even if they were a result of negligent acts by the defendants. Accordingly, the Court **GRANTS** the defendants' motion for summary judgment (dkt. no. 33) and **DISMISSES** Lutz's complaint **WITH PREJUDICE**.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and to enter a separate judgment order.

DATED: May 9, 2016.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE
